UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

ORLANDES NICKSION,

        Petitioner,

      v.                                  Case No.  12-C-0240

UNITED STATES OF AMERICA,

        Respondent.

ORDER DENYING ORLANDES NICKSION'S MOTION PURSUANT TO 28 U.S.C.
§ 2255, DISMISSING CASE AND DENYING CERTIFICATE OF APPEALABILITY

On March 13, 2012, Orlandes Nicksion filed a motion to vacate, set aside, or correct his 2009 sentence and judgment of conviction.  The court allowed Nicksion to withdraw his guilty plea because he did not understand that the temporal scope of the conspiracy dated back to 2002 and that a 2002 homicide would be attributed to him.  Subsequently, a jury convicted him for his involvement in a drug trafficking conspiracy, pursuant to 21 U.S.C. § 846, aiding the discharge of a firearm during the drug trafficking conspiracy, pursuant to 18 U.S.C. § 924(c)(1)(A)(iii), and being a felon in possession of a firearm, pursuant to 18 U.S.C. § 922(g)(1).  The court imposed a sentence of 480 months.

On appeal, Nicksion argued that the court violated his Sixth Amendment confrontation right by admitting the testimony of Frederick Bonds, Robert Bridges, Darin Palmer, and Milwaukee Police Detective Chad Wagner.  The conviction was affirmed by the Seventh Circuit on December 9, 2010, and Nicksion did not file a petition for certiorari

in the United States Supreme Court. *United States v. Nicksion*, 628 F.3d 368 (7th Cir. 2010). Instead, Nicksion filed the pending motion.[1]

Nicksion's § 2255 motion is not a substitute for a direct appeal. *See Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007)(Section 2255 motion is "neither recapitulation of nor a substitute for a direct appeal.") (citation omitted). Thus, if a § 2255 petitioner does not raise a claim on direct appeal, that claim is barred from the court's collateral review unless the petitioner can demonstrate cause for the procedural default and actual prejudice from the failure to appeal. *See Sandoval v. United States*, 574 F.3d 847, 850–51 (7th Cir. 2009). On the other hand, claims of ineffective assistance of counsel may be brought for the first time in a § 2255 motion. *See Massaro v. United States*, 538 U.S. 500, 504 (2003), *United States v. James*, 635 F.3d 909, 916 (7th Cir. 2011).

In his pending § 2255 motion, Nicksion raises eleven grounds for relief and has asked to amend to include an argument that he "recently discovered" that counsel should have challenged the government's acquisition of cell-site data pursuant to 18 U.S.C. § 2703(d). Initially, he argues that the court lacked jurisdiction to prosecute him because the prosecutor did not go before a grand jury on the third superseding indictment, and notes as a "red flag" that the name of the foreperson was "blacked out" on the indictment, thereby making the foreman anonymous.

Nicksion did not raise this argument on appeal, and therefore it fails. The argument also fails on the merits. The third superseding indictment appears at Docket No. 419 of *United States v. Nicksion*, Case No. 05-CR-146 (E.D. Wis.). The document is dated

---

[1] The government does not challenge the timeliness of the motion.

September 18, 2007, and signed by the foreperson of the grand jury. Moreover, redacting the name of the foreperson is a common practice in this district, and is not evidence of prosecutorial misconduct.

Nicksion's remaining contentions are predicated on his belief that his trial and appellate counsel were ineffective in their representation. Specifically, Nicksion maintains that counsel failed to: (1) assert that the placement of the GPS on his vehicle was a violation of the Fourth Amendment; (2) request that the special verdict forms include the guideline drug weights; (3) properly cross-examine the government's lead case agent during a suppression hearing; (4) raise the Fourth and Sixth Amendment arguments on appeal; (5) make a Tenth Amendment objection and contest federal jurisdiction; (6) assert that the government agent's misconduct violated Nicksion's due process rights; (7) object to the court sentencing him on the basis of facts other than the jury's verdict; (8) file a discovery motion after the third superseding indictment; (9) appeal the denial of his right to confront a government agent in a violation of his due process and fair trial rights; and (10) object to the third superseding indictment and assert prejudice from the government's failure to provide additional discovery.

To establish ineffective assistance of counsel, a defendant must satisfy a two-prong standard. *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed.2d 674 (1984). First, a defendant must demonstrate that his attorney's representation was "deficient" because it "fell below an objective standard of reasonableness." *Id.* at 687–88. Second, a defendant must show that this deficient performance prejudiced his defense. *Id.* at 694. Prejudice is demonstrated by a showing that "there is a reasonable probability

3

that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

Considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance. The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 787, 178 L. Ed. 2d 624 (2011) (internal quotation marks and citations omitted).

Turning to ground two, Nicksion contends appellate counsel was ineffective in failing to raise a Fourth Amendment argument regarding the GPS tracking device on his vehicle. Trial counsel filed a motion to suppress based on this argument, and Milwaukee Police Department Detective Steven Wellens testified at an evidentiary hearing. Wellens was present when the GPS was placed on the vehicle in an open parking lot in front of an apartment building at 8666 South Chicago Road, and he testified that Nicksion lived in a unit north of the lot. (Case No. 05-CR-146, doc. 644 at 9.) There were no signs posted limiting access to the lot, and the officers did not open the door, hood, or trunk of the vehicle to install the device. In his decision on the suppression motion, the magistrate judge squarely rejected the Fourth Amendment challenge and this court adopted the recommendation.

Although appellate counsel abandoned the issue, his performance was not deficient because, at all relevant times, there was no binding case law in this circuit recognizing that the attachment and use of the GPS constituted a search under the Fourth Amendment. Indeed, at the time of the appeal, *United States v. Garcia*, 474 F.3d 994 (7th Cir. 2007),

4

permitted the attachment and use of the GPS tracker on Nicksion's vehicle without a warrant on a showing of probable cause. Although the Supreme Court held in 2012 that the intrusion on the property interest of a car's owner is a "search," valid only if reasonable, *United States v. Jones*, —— U.S. ——, 132 S. Ct. 945, 181 L. Ed.2d 911 (2012), Nicksion's appeal was decided on December 9, 2010. *See generally United States v. Brown*, 744 F.3d 474, 476 (7th Cir. 2014)("It would be inappropriate to use the exclusionary rule to suppress evidence derived from a GPS locator before the Supreme Court's decision in *Jones.*") On January 14, 2015, the Seventh Circuit Court of Appeals held that officers acting prior to the *Jones* decision reasonably relied on existing precedent to conclude that installation of a GPS device in a public space and the location data it produces is not within the scope of the Fourth Amendment. *U.S. v. Taylor*, 2015 WL 162655 (7th Cir. 2015 Jan. 14, 2015). Consequently, Nicksion cannot establish that his appellate attorney's failure to raise this issue fell below the objective standard of reasonableness.

The court will next consider grounds three and eight because they appear to be variations on a theme: counsel failed to object at sentencing regarding issues relating to the application of the United States Sentencing Guidelines. Nicksion believes that the jury should have made a finding regarding the weight of the kilograms of cocaine involved in his drug conspiracy (0 to 15, 15-50, or 50-150). In addition, he maintains that counsel failed to raise a *Booker* objection regarding the guideline enhancement for his supervisory role. These arguments are predicated on a fundamental misunderstanding of counsel's performance and the court's application of the guidelines. First, Nicksion had a base level offense of 38 because of his role in the homicide of Earl Benion. *See* U.S.S.G. 2A1.2 (second degree murder). Consequently, the court did not make findings with respect to

drug quantity. Second, counsel's performance was not deficient where he objected to the finding that Nicksion was a leader or organizer, and argued that there was no testimony or other evidence that Nicksion "dictated or supervised or organized any of these other people who distributed cocaine in terms of telling them where they could sell, to whom they could sell, and what price they could sell." (Case No. 05-CR0146, doc. 656 at 5.) Notwithstanding counsel's assertion that there was strictly a buyer/seller relationship between Nicksion and his clients, and the government's agreement not to recommend an adjustment for Nicksion's role in the offense, the court found that Nicksion and Cubie were near the top of the hierarchy in the conspiracy and were not on equal footing with the other conspirators. *Id.* at 5-10. Nicksion played a leadership role in the distribution of the product to street sellers and in the finding and killing of Earl Benion. Consequently, counsel was not ineffective regarding these matters.

Ground four asserts that Nicksion's attorney failed to properly cross-examine the government's lead case agent during a wiretap suppression hearing. Along the same lines, in ground seven Nicksion argues that the government's lead agent engaged in numerous instances of misconduct in violation of Nicksion's due process rights. These arguments indicate that he is challenging trial counsel's failure to participate in the evidentiary hearings conducted by the magistrate judge in connection with his co-defendants' motion to suppress. Each of the attorneys representing Mark Cubie and Ronald Terry cross-examined the government's witness, Detective Danny Thompson, highlighted inconsistencies, and attempted to discredit Thompson. After the first hearing, the government filed Thompson's affidavit confessing errors in his testimony. The

magistrate conducted a second hearing during which Thompson explained his errors, and the magistrate found that the original misstatements were made in good faith.

At the start of trial, Nicksion argued to this court that the assistant United States attorney engaged in prosecutorial misconduct by allowing a witness to testify under oath regarding facts he knew to be false. Nicksion's trial counsel explained that he had made a strategic decision not to pursue this issue further because he had no evidence that the assistant United States attorney was not proceeding in good faith. Moreover, the conflicting testimony was revealed on cross-examination. As Nicksion's counsel explained to this court:

> You need to show that some substantial right was affected by it, and I just don't see it here because of that, Daniel Thompson's testimony, his explanations, the cross-examination, the court's findings of fact are all in the record and, from what I understand Mr. Terry and Mr. Cubie both are in the Seventh Circuit, I believe they may have already had oral argument on that issue. So I believe that the issue was aired out. But the bottom line is I don't have any evidence of any bad faith and I don't have any evidence that a substantial right of Mr. Nicksion was affected, even if there were prosecutorial misconduct. (Case No. 05-CR-146, doc. 647 at 8.)

Hence, a strategic decision was made not to pursue this issue further. Moreover, it is clear on this record that the decision was not prejudicial to Nicksion because this court adopted the magistrate judge's recommendation that the motion to suppress be denied, and the Seventh Circuit Court of Appeals affirmed finding Thompson's mistakes to be "regrettable" but "nothing more than mistakes." (Case No. 05-CR-146, docs. 341, 416); *United States v. Terry*, 572 F.3d 430, 435 (7th Cir. 2009). Based on these rulings, the fact that Thompson never testified at trial, and that Nicksion proffers no evidence to suggest that counsel missed a line of inquiry that would otherwise sustain this claim, Nicksion cannot satisfy *Strickland* on this claim.

Ground five asserts that appellate counsel failed to raise Fourth and Sixth Amendment issues on appeal. If Nicksion is referring to the GPS argument raised above, the court has already established that counsel's performance was not deficient in this respect. With respect to sentencing, the jury's general and special verdicts meant the maximum sentence was life in prison. Consequently, the court finds no basis for the Sixth Amendment claim respecting appellate counsel.

In grounds nine and eleven, Nicksion submits that trial counsel should have requested discovery and a "true and correct copy of the Federal Grand Jury proceedings." He believes that there is a "reasonable probability that it would have been discovered that no additional, if any other evidence was ever presented to a Federal Grand Jury in obtaining the third superseding indictment." Similarly, Nicksion maintains that he was unduly prejudiced when the government failed to provide discovery or "better yet certified copies/excerpts of the alleged third seated Federal Grand Jury to conclusively show what if any new evidence was presented to said jury to justify its unfair back dating of the conspiracy count."

At all times, the government represented that it was proceeding in accordance with its open file policy and there is nothing other that Nicksion's argument suggesting that any evidence was withheld. On September 28, 2007, Nicksion's attorney stated on the record that he had received new discovery at the time of the third superseding indictment and needed additional time to file motions. (Case No. -5-CR-146, doc. 429.) Also, counsel filed a motion to dismiss the third superseding indictment on October 13, 2007. (*Id.* at doc. 439.) The government responded to that motion by referring Nicksion to the discovery provided in November of 2006 in which the government revealed that it would be

8

introducing evidence of the Earl Benion homicide. Further, the government represented to this court that there was no new discovery related to the additional charge of the third superseding indictment. It merely attempted to conform the indictment to the evidence that the court had ruled could be presented at trial relating to the Benion homicide. (*Id.* at doc. 442.) Importantly, Nicksion points to no exculpatory evidence that should have been produced by the government, and the government provided defense counsel with the grand jury transcripts of those individuals who testified in the grand jury proceedings. Hence, this claim fails as well.

Finally, Nicksion attacks counsel's failure to challenge the government's acquisition of cell-site data pursuant to 18 U.S.C. § 2703(d). The information challenged by Nicksion was collected by the government from Nicksion's cell phone provider in 2005 through an 18 U.S.C. § 2703(d) application. Nicksion argues that this evidence tracked his movement in Chicago, which is a city where cocaine was alleged to have been purchased during the conspiracy. He cites two decisions from 2006, one of which involved a finding by Judge Callahan that the government could not obtain this type of cell-site data without a showing of probable cause. *In re Application of the United States of America for an Order Authorizing the Disclosure of Prospective Cell Site Information,* 412 F. Supp. 2d 947 (E.D. Wis. Jan. 17, 2006); *In re Application of the United States of America for an Order Authorizing the Disclosure of Prospective Cell Site Information*, 2006 WL 2871743 (E.D. Wis. Oct. 6, 2006). Judge Adelman affirmed Judge Callahan on the statutory interpretation, but commented in a footnote that it was "doubtful that the government's use of cell site information to track a suspect implicates the Fourth Amendment, requiring use of probable cause as a constitutional matter." 2006 WL 2871743, *7 (n. 6).

Even if counsel had challenged the cell-site data on this ground, there would be no exclusion of said evidence absent a showing of "deliberate, reckless, or grossly negligent disregard" of the Constitution. *Herring v. United States,* 555 U.S. 135, 144 (2009). There was no such evidence in this case. Moreover, the agents in this case followed the protocol for securing such data under Section 2703(d). Also, at the time of the application case law did not require a showing of probable cause for the collection of location data. This point is underscored by the Seventh Circuit's recent decision in *U.S. v. Thousand*, 558 Fed. Appx. 666, 670 (7th Cir. 2014). There, the Seventh Circuit declined to find that a probable cause standard governed § 2703(d) applications seeking cell-tower data that would disclose a subscriber's location. The court explained:

> Before the days of mobile phones, the Supreme Court held that a person has no legitimate expectation of privacy in a phone company's records of numbers dialed on a telephone, and thus a defendant cannot invoke the Fourth Amendment when the police install a pen register without a warrant. *Smith v. Maryland*, 442 U.S. 735, 745–46, 99 S. Ct. 2577, 61 L. Ed. 2d 220 (1979); *see United States v. Kramer*, 711 F.2d 789, 792 (7th Cir.1983). After *Smith* was decided, Congress enacted the Electronic Communications Privacy Act of 1986, Pub. L. No. 99–508, 100 Stat. 1848 (1986), which statutorily limits the ability of law enforcement to obtain certain phone records from telecommunication carriers. *See* Robert A. Pikowsky, *An Overview of the Law of Electronic Surveillance Post September 11, 2001*, 94 Law Libr. J. 601, 608 (2002). The Stored Communications Act is part of that legislation and allows authorities to obtain a court order compelling disclosure of noncontent records, including subscriber information and connection data, that are "relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(c), (d); *see* Orin S. Kerr, *Internet Surveillance Law after the USA Patriot Act: The Big Brother that Isn't*, 97 NW. U.L. Rev. 607, 611 (2003). A showing of probable cause is not required. *See In re Application of U.S. for Order Pursuant to 18 U.S.C. Section 2703(d),* 707 F.3d 283, 287 (4th Cir.2013); *In re Application of U.S. for Order Directing Provider of Elec. Commc'n Serv. to Disclose Records to Gov't*, 620 F.3d 304, 315 (3d Cir.2010). Authorities regularly invoke the Stored Communications Act during criminal investigations to obtain court orders for information relating to cell-site tower locations. *See Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 3–4 (D.C. Cir.2011) .

We have yet to address whether, notwithstanding *Smith*, cell-tower information that telecommunication carriers collect is protected by the Fourth Amendment. Recently the Fifth Circuit concluded that Supreme Court precedent "does not recognize a situation where a conventional order for a third party's voluntarily created business records transforms into a Fourth Amendment search or seizure," and thus the court rejected the contention that using court orders available through the Stored Communications Act to collect historical cell-tower data without a showing of probable cause is unconstitutional. *In re Application of U.S. for Historical Cell Site Data*, 724 F.3d 600, 614–15 (5th Cir.2013); *see also In re Application of U.S. for Order Directing Provider of Elec. Commc'n, Serv. to Disclose Records to Gov't*, 620 F.3d at 313–15 (concluding that, although § 2703(d) does not require authorities to show probable cause to obtain historical cell-tower data, judges have authority in particular cases to reject § 2703(d) applications and instead require use of search warrant establishing probable cause); *United States v. Forest*, 355 F.3d 942, 950–52 (6th Cir.2004) (concluding that DEA use of cell-site data was not a "search" under Fourth Amendment because authorities tracked defendant's movements along public highways), *vacated on other grounds sub. nom. Garner v. United States*, 543 U.S. 1100, 125 S. Ct. 1050, 160 L. Ed. 2d 1001 (2005). We have not found any federal appellate decision accepting Thousand's premise that obtaining cell-site data from telecommunications companies—under any factual scenario—raises a concern under the Fourth Amendment.

*Id.* Nicksion's argument also fails on the prejudice prong inasmuch as multiple witnesses testified about his drug source and Nicksion's involvement in the conspiracy.

Because the court is denying Nicksion's § 2255 motion, it must consider whether to issue a certificate of appealability pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings and Rule 22(b)(1) of the Federal Rules of Appellate Procedure. A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Tennard v. Dretke*, 542 U.S. 274, 282 (2004). To make such a showing, the petitioner must "demonstrate that reasonable jurists could debate whether [the] challenge in [the] habeas petition should have been resolved in a different manner or that the issue presented was adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)

(certificate of appealability should issue if the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."). Having failed to meet his burden, Nicksion needs no encouragement to proceed further.  Consequently,

IT IS ORDERED that Orlandes Nicksion's motion pursuant to 28 U.S.C. § 2255 is denied.

IT IS FURTHER ORDERED that this case is dismissed.

IT IS FURTHER ORDERED that a certificate of appealability is denied.

Dated at Milwaukee, Wisconsin, this 28th day of January, 2015.

BY THE COURT

/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE